# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

JOHNNY ESQUIVEL,

    Petitioner,

v.

BRIAN WILLIAMS, et al.,

    Respondents.

Case No. 2:17-cv-02227-RFB-PAL

**ORDER**

Two fully briefed motions are before the court: Respondents' motion to dismiss and Petitioner Esquivel's motion for discovery. ECF Nos. 20, 29. For the following reasons, the Court grants Respondents' motion to dismiss, finding that grounds 6 and 7 are not exhausted. Grounds 1(B), 1(C), 3, 4, and 5, although not presented to the state courts, are technically exhausted and procedurally defaulted because Esquivel cannot show good cause and prejudice in state court to overcome state-law procedural bars. The Court defers any finding of good cause and prejudice on those claims until Esquivel has refiled his motion so that it contains only exhausted claims. Finally, the Court denies Esquivel's motion for discovery because if finds that the discovery request is premature.

**I.    Factual Background**

The court recites only a general, summary statement of facts that are relevant to the issues in the motion to dismiss.

Henrique Freitas, Esquivel's roommate, and Eddie Wernicke, the decedent, did not like each other. The dislike arose from a housing arrangement between Freitas and Wernicke that soured early in 2009.

On January 19, 2011, Freitas drove past the residence of Brent West at least twice. Wernicke and Lorrie-Ann Williams, his girlfriend, were staying at the residence. Freitas taunted Wernicke. Wernicke chased Freitas on foot and tried to pull Freitas out of the car. Freitas drove away toward his own house. Wernicke continued to chase Freitas. Williams and West got into West's mother's car, followed Wernicke, picked him up, and drove to Freitas' house.

At Freitas' house, Wernicke and Freitas started fighting. Also present were Williams, West, and Esquivel. Until that point, Esquivel had never seen Wernicke, Williams, and West, and those three had never seen Esquivel. The fight soon included everyone present. The fight ended either upon mutual exhaustion or when Freitas called to Esquivel to get his gun; the testimonies differ.

On January 20, 2011, Esquivel walked past West's house twice. He had put a gun into the back waistband of his pants. The first time, he was walking south, away from Freitas' house. Esquivel saw Eduardo Sepulveda and Esmeralda Leon in their car, which they had backed into West's driveway. They also saw him. Sepulveda and Leon left West's house then returned later, this time parking head-on into the driveway. The second time, Esquivel was walking north, toward Freitas' house. Wernicke was outside this time.

Heated words were said; the testimonies differ on who said what. Eventually, six people were outside, or on the front threshold, of West's house. Esquivel was standing in the front yard. Sepulveda and Leon still were in their car. Williams was standing at the back of West's pickup truck, holding a baseball bat. West was near the front of the pickup truck. Mike Malinky, who also lived at West's house, was near the front door. Wernicke was outside, but his location was disputed.

At some point, Wernicke threw a chair at Esquivel. Esquivel either knocked it away or sidestepped it. Esquivel took out his gun and shot Wernicke. Esquivel testified that Wernicke was advancing on him. Ex. 54, at 50-51; ECF No. 21-24, at 51-52. However, Wernicke was shot in the back, with an immediately fatal wound. Ex. 53, at 125-39, ECF No. 21-23, at 126-40. Wernicke fell across the threshold of the front door, around 20 feet away from where Esquivel was standing.

The gun jammed. West, Leon, and Sepulveda all testified that Esquivel tried to shoot again, realized that the gun had jammed, tried unsuccessfully to clear the jam, and then fled in the direction toward Freitas' house. Ex. 52, at 192-93, ECF No. 21-22, at 193-94 (West's testimony); Ex. 53, at 30-31, ECF No. 21-23, at 31-32 (Leon's testimony); Ex. 53, at 68, 70-71, ECF No. 21-23, at 69, 71-72 (Sepulveda's testimony). Esquivel testified that he shot only once, that he tried to shoot only once, and only learned later that the gun had jammed. Ex. 54, at 55-56, ECF No. 21-24, at 56-57.

## II. Procedural Background

After his arrest, Esquivel was charged with murder with the use of a deadly weapon. Ex. 40, ECF No. 21-10. After a trial, the jury found Esquivel guilty of second-degree murder with the use of a deadly weapon. Ex. 9, ECF No. 16-9. The state district court convicted Esquivel accordingly. Ex. 10, ECF No. 16-10. Esquivel appealed, and the Nevada Supreme Court affirmed. Ex. 15, ECF No. 16-15.

Esquivel then filed a post-conviction habeas corpus petition in the state district court. Ex. 17, ECF No. 16-17. The state district court appointed counsel, who filed a supplement. Ex. 19, ECF No. 16-19. The state district court held an evidentiary hearing. The state district court denied the petition. Ex. 84, ECF No. 23. Esquivel appealed, and the Nevada Supreme Court affirmed. Ex. 27, ECF No. 16-27.

Esquivel then commenced this action. The Court appointed counsel, who filed the amended petition. ECF No. 15. Respondents' motion to dismiss and Esquivel's motion for discovery followed. ECF Nos. 20, 29.

## III. DISCUSSION

Before a federal court may consider a petition for a writ of habeas corpus, a petitioner must exhaust the remedies available in state court. 28 U.S.C. § 2254(b). To exhaust a ground for relief, a petitioner must fairly present that ground to the state's highest court, describing the operative facts and legal theory, and give that court the opportunity to address and resolve the ground. See Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam); Anderson v. Harless, 459 U.S. 4, 6 (1982).

**A. Grounds 6 and 7 are Not Exhausted.**

As noted above, prosecution witness Sepulveda, along with West and Leon, testified in part that Esquivel tried to fire his pistol more than once, but the pistol jammed. Sepulveda also admitted that he was in jail, awaiting sentencing on a charge of attempted possession of a stolen vehicle. That charge was the result of plea negotiations and the dropping of charges of conspiracy to commit larceny, possession of a stolen vehicle, burglary, and possession of a controlled substance. In another criminal case, Sepulveda was charged with felony possession of a controlled substance, and he pleaded guilty to a misdemeanor charge.

In ground 6, Esquivel argues that the prosecution in his case failed to disclose that Sepulveda received favorable treatment in exchange for his testimony against Esquivel, and that information could have been used to impeach Sepulveda. See Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972). In ground 7, Esquivel argues that trial counsel provided ineffective assistance by not investigating whether the prosecution gave favorable treatment to Sepulveda in exchange for his testimony against Esquivel.

Esquivel admits that he has not exhausted grounds 6 and 7. Esquivel acknowledges that Nevada has an exception to its procedural bars against untimely and successive petitions for claims that rely upon new evidence that could not have been discovered earlier. Esquivel has stated an intent to litigate these claims in state court. First, however, he requests that this Court authorize discovery to develop the evidence in support of grounds 6 and 7.

**B. The Court Will Not Authorize Discovery**

Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts states, "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." If, through "specific allegations before the court," the petitioner can "'show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.'" Bracy v. Gramley, 520 U.S. 899, 908–09 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)). The Supreme Court noted that the facts of Bracy made it an abuse of discretion not to allow discovery, "Rule 6(a)

makes it clear that the scope and extent of such discovery is a matter confided to the discretion of the District Court." Bracy, 520 U.S. at 909.

However, discovery in a federal habeas action does not necessarily extend to unexhausted federal claims. Calderon v. U.S. Dist. Court for the E. Dist. of California ("Roberts"), 113 F.3d 149 (9th Cir. 1997) (finding that district court's grant of discovery was "inappropriate" when habeas petition contained unexhausted claims). Moreover, in Cullen v. Pinholster, 563 U.S. 170, 183–84 (2011), the Supreme Court held that if a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitations of section 2254(d)(1) based upon the record that was before that state court. To show good cause, in addition to any other required showing, the petitioner must demonstrate that the documents he seeks to obtain can be considered in the federal habeas proceeding under Cullen. Otherwise, the parties and custodians of the discovery documents may expend considerable time and money in obtaining or producing discovery materials that will have no effect on the outcome of the case.

Esquivel attempts to support his motion for discovery with citations to cases with claims that have become unexhausted through discovery. For example, Esquivel cites Gonzalez v. Wong, a case in which the district court allowed discovery that in turn caused a previously exhausted claim to become unexhausted. 667 F.M3d 965 (9th Cir. 2011). The district court denied a stay. The Ninth Circuit remanded with instructions to grant a stay while the petitioner returned to state court to litigate the now-unexhausted claim. Id. at 972. Esquivel essentially argues that because discovery grants "can always make a claim exhausted," the Court should allow discovery on an unexhausted claim.

Esquivel also argues that the subsequent decision of the Supreme Court in Rhines v. Weber, 544 U.S. 269 (2005), has undermined the reasoning of the cases holding that discovery should be denied for unexhausted claims. The Court disagrees. Rhines was the answer to a problem of

5

unexhausted claims created by the 1996 enactment of the one-year period of limitation of 28 U.S.C. § 2244(d)(1). Before the enactment of § 2244(d)(1), a petitioner with unexhausted claims could dismiss the federal petition, litigate the unexhausted claims in state court, and then file a new, completely exhausted federal petition.[1] After enactment of § 2244(d)(1), that procedure likely would lead to the new, completely exhausted federal petition being untimely for two reasons. First, the first federal petition would not toll the one-year period under § 2244(d)(2) because it was not a state-court post-conviction proceeding. Duncan v. Walker, 533 U.S. 167, 181–82 (2001). Second, if the state has its own statute of limitations, as Nevada does, Nev. Rev. Stat. § 34.726(1), the state petition filed after the dismissal of the first federal petition might be untimely, and an untimely state post-conviction petition does not toll the one-year period. Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005). The non-tolled time spent on those two petitions, plus any other non-tolled time, would likely make any subsequent federal petition untimely. To address these problems, Rhines held that a court can stay a mixed petition and then reopen the action after the grounds are exhausted, if the petitioner can demonstrate good cause for the failure to exhaust grounds for relief. 544 U.S. at 278. With a stay under Rhines, a petitioner could litigate the unexhausted claims in state court without worrying that all his federal claims would be untimely after he returned to federal court.

Esquivel reasons that at the time of those Ninth Circuit decisions, a failure to exhaust was a death knell of a claim. ECF No. 34, at 4-5 ("Before the Supreme Court issued Rhines, some courts took the position a petition with unexhausted claims was subject to immediate dismissal."). Now, Esquivel reasons, a federal court can stay an action while the petitioner exhausts the claim in state court, and then the federal court can consider what to do with the claim after it is exhausted.

However, Esquivel's statement that a petition with unexhausted claims was subject to immediate dismissal does not tell the whole story. Whether before or after the enactment of § 2244(d)(1) and the Supreme Court's decision in Rhines, a district court was always entitled to give a petitioner the opportunity to delete the unexhausted claims and proceed with the exhausted claims. Rose v. Lundy, 455 U.S. 509, 520-22 (1982). In Calderon v. United States District Court

---

[1] The newly exhausted claims might also have been procedurally defaulted, but that was the case before and after enactment of § 2244(d)(1).

("Taylor"), 134 F.3d 981, 986-89 (9th Cir. 1998), the Ninth Circuit did not stop a district court from (1) allowing Taylor to amend his petition to delete the unexhausted claims, (2) staying the petition while Taylor exhausted his grounds in state court, and (3) suggesting that Taylor could further amend the petition to include the newly exhausted grounds. The Ninth Circuit later adopted Taylor as a stay-and-abeyance option district courts could consider at a petitioner's request. Robbins v. Carey, 481 F.3d 1143, 1148 (9th Cir. 2007). In short, at the time that the Ninth Circuit was holding that a district court should not grant discovery on an unexhausted claim, it was also approving of a procedure that would remove concerns about timeliness should a petitioner litigate unexhausted claims in state court. Rhines created a nationwide rule for staying a mixed habeas corpus petition, and it avoids the complications of the three-step procedure, but, in the Ninth Circuit at least, Rhines does not affect the determination of whether a court should grant discovery on an unexhausted claim.

Having reviewed these decisions at length, the court returns to two guiding principles. First, "Rule 6(a) makes it clear that the scope and extent of such discovery is a matter confided to the discretion of the District Court." Bracy, 520 U.S. at 909. Second, "The state court is the appropriate forum for resolution of factual issues in the first instance, and creating incentives for the deferral of factfinding to later federal-court proceedings can only degrade the accuracy and efficiency of judicial proceedings." Keeney v. Tamayo-Reyes, 504 U.S. 1, 9 (1992), superseded by statute as stated in Williams v. Taylor, 529 U.S. 362 (2000). Applying those principles, the Court concludes in its discretion that granting discovery in this action in support of grounds 6 and 7 is premature.

First, grounds 6 and 7 are unexhausted; nobody disputes that. Furthermore, this is not a situation in which the grounds are unexhausted because Esquivel presented the basic claims but did not mention that they were claims of federal law. This is not a situation in which the grounds are unexhausted because Esquivel litigated them in state district court but did not appeal the denials of the grounds. This is not a situation, like Gonzalez, in which the grounds are unexhausted because Esquivel litigated the grounds to decisions on the merits in state court and then has presented new facts that strengthen the grounds to the point that they no longer are exhausted. Esquivel has not

exhausted grounds 6 and 7 for the simple, classic reason: He never presented the grounds, in any form, to any state court.

Second, although Esquivel faces state-law procedural bars for untimeliness and successiveness, Esquivel states that Nevada recognizes good cause to excuse a claim, such as a Brady/Giglio claim, in which Esquivel could not have known the facts during the earlier proceeding.

Third, state courts allow a petitioner to conduct discovery with the permission of the court. Nev. Rev. Stat. § 34.780. If the Court allowed discovery to proceed on completely unexhausted grounds and then stayed the action to allow Esquivel to exhaust those grounds in state court, then the Court would be creating the incentives for inefficiency that Tamayo-Reyes discourages. 504 U.S. at 9.

Esquivel argues that it would be less efficient to request discovery from state court. Specifically, he argues that if he goes back to state court now and the state court denies discovery and rejects the claims on their merits, then he would have to return to federal court and request discovery again, at which point the State would re-raise its objection that the record the federal court is reviewing is not identical to that of the state court's under Cullen. The Court does not find this argument persuasive. The state court could just as likely grant discovery and deny Esquivel's claims on the merits, in which case they would be fully exhausted when brought again before this Court. Regardless of whether this Court grants Esquivel's motion for discovery, the state court will have to assess the merits of Esquivel's unexhausted claims. Under these circumstances, if Esquivel wants to pursue these grounds in state court, then he should seek leave to conduct discovery in state court.

**C.    Grounds 1(B), 1(C), 3, and 4 are Technically Exhausted and Procedurally Defaulted**

Grounds 1(B), 1(C), 3, and 4 are common in two ways. First, Esquivel has not presented the claims in any form to any state court. Second, they are claims of ineffective assistance of trial counsel.

Esquivel argues that the Court should consider the claims to be technically exhausted but procedurally defaulted. Esquivel explains that if he presents these claims to the state courts now,

the state statute of limitations, Nev. Rev. Stat. § 34.726(1), and the state bar against second or successive petitions, Nev. Rev. Stat. § 34.810, would apply. Although those statutes allow for a showing of good cause and prejudice to excuse their operation, Esquivel states that he has no showing of good cause that the state courts would accept. On the other hand, Esquivel argues that he does have a showing of good cause that this Court could accept under Martinez v. Ryan. 566 U.S. 1, 14 (2012). In Martinez, the Supreme Court found that good cause could be shown to overcome a procedural default in federal habeas proceedings if the petitioner could show that state post-conviction counsel provided ineffective assistance by not raising ineffective assistance of trial counsel claims in the post-conviction proceedings before the state district court. By contrast, Nevada does not accept ineffective assistance of post-conviction counsel as good cause to excuse the state-law procedural bars. Brown v. McDaniel, 331 P.3d 867, 870-75 (Nev. 2014).

The Court prefers to address these matters in the same manner that it often does when a claim of cause and prejudice is based upon an independent claim of constitutionally ineffective assistance of either trial or appellate counsel. In such circumstances, the Court often defers a resolution of the cause-and-prejudice analysis until after the filing of an answer and reply contingently addressing the claims also on the merits, so that the Court may have the benefit in its analysis of a full factual and legal presentation as to all relevant claims. That is the procedure that the Court will follow herein.

**D.    Ground 5 is Technically Exhausted and Procedurally Defaulted**

Underlying ground 4, a claim of ineffective assistance of trial counsel, is ground 5. Jury instruction 20 stated that an honest but unreasonable belief in the need for self-defense does not negate malice and does not reduce an offense from murder to manslaughter. Esquivel claims that the instruction is so confusing, particularly under the circumstances of this case, that it violates due process. Ground 5 is not exhausted because Esquivel never has presented the claim in any form to any state court. Esquivel argues that the court should consider ground 5 to be technically exhausted and procedurally defaulted. Esquivel states that he has no argument for good cause and prejudice to excuse the state-law procedural bars, if he returned to state court. Martinez does not apply to ground 5 because it is not a claim of ineffective assistance of trial counsel. However, Martinez

9

does apply to ground 4, the claim of ineffective assistance of trial counsel that is related to ground 5. If, under Martinez, the procedural default of ground 4 is excused, then that claim of ineffective assistance of trial counsel can itself be good cause to excuse the procedural default of ground 5.

Because the Court is deferring the question of the procedural default of ground 4 to the answer and reply, it follows that the Court defers the question of the procedural default of ground 5 to the answer and reply.

### E. Ground 6.

Respondents argue that the allegations in ground 6 are conclusory. The Court will not address this argument because the Court has found that ground 6 is not exhausted. Esquivel will need to dismiss ground 6 or litigate the claim in ground 6 in state court.

### F. Respondents Must File Transcripts of Missing Testimony.

When the state district court denied the post-conviction habeas corpus petition, it noted that it held an evidentiary hearing over three days:

> On September 28, 2015, Defendant's trial counsel, Frank Kocka, Esq., testified.
> On December 7, 2015, Venus Lovetere, Mr. Kocka's investigator, testified. On January 8, 2016, Dr. Norman Roitman testified.

Ex. 84, at 2, ECF No. 23, at 3. It appears that only the transcript of the testimony of Venus Lovetere is in the record. See Ex. 97, ECF No. 23-13. The only other item in the indices of exhibits (ECF No. 16, ECF No. 21) identified as a transcript of the evidentiary hearing is actually the state district court announcing its decision. Ex. 90, ECF No. 23-6. Under Rule 5(c) of the Rules Governing Section 2254 Cases in the United States District Courts, respondents need to file the transcripts of Kocka's testimony and Roitman's testimony.

### IV. CONCLUSION

The amended petition is mixed, containing both claims exhausted in state court and claims not exhausted in state court, and is thus subject to dismissal. See Rose v. Lundy, 455 U.S. 509, 521-22 (1982); Szeto v. Rushen, 709 F.2d 1340, 1341 (9th Cir. 1983).

**IT THEREFORE IS ORDERED** that Esquivel's motion for discovery (ECF No. 29) is DENIED.

**IT IS FURTHER ORDERED** that Respondents' motion to dismiss (ECF No. 20) is GRANTED. Grounds 6 and 7 are unexhausted. Grounds 1(B), 1(C), 3, 4, and 5 are technically exhausted and procedurally defaulted.

**IT IS FURTHER ORDERED** that Esquivel shall have thirty (30) days from the date of entry of this order to file a motion for dismissal without prejudice of the entire petition, for partial dismissal of grounds 6 and 7, or for other appropriate relief. Within ten (10) days of filing such motion, Esquivel must file a signed declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 that he has conferred with his counsel in this matter regarding his options, that he has read the motion, and that he has authorized that the relief sought therein be requested. Failure to comply with this order will result in the dismissal of this action.

**IT IS FURTHER ORDERED** that the Court defers consideration of whether Esquivel can demonstrate cause and prejudice under Martinez v. Ryan, 566 U.S. 1 (2012), to overcome the procedural default of grounds 1(B), 1(C), 3, 4, and 5 until after the filing of an answer and reply in this action, if necessary.

**IT IS FURTHER ORDERED** that Respondents shall have thirty (30) days from the date of entry of this order to file transcripts of the state-court evidentiary hearing held on September 28, 2015, and January 8, 2016.

DATED: September 30, 2019.

_____
RICHARD F. BOULWARE, II
United States District Judge